## Staunton.

### FLICK v. FRIDLEY'S ADMINISTRATOR.

#### SEPTEMBER 29th, 1887.

CHANCERY PRACTICE—*Trust-deed—Injunction—Case at bar.*—A case where trust-deed debtor obtains injunction on the allegation that in life-time of his creditor they settled, and that the trust-deed debt was settled, and the answer of the administrator of the creditor denies on oath the allegation, and calls for proof, and the plaintiff fails to produce satisfactory evidence of his settlement, and the bill was dismissed.

Appeal from decree of circuit court of Rockingham county, rendered October 20th, 1884, in the cause of B. F. Flick, complainant, against Henry N. Beery, administrator of Charles Fridley, deceased, and Jasper Hause, trustee, defendants. At the hearing the bill was dismissed with costs, and Flick obtained an appeal and *supersedeas*. Opinion states the case.

*Strayer & Liggett,* for the appellant.

*O. B. Roller,* for the appellees.

FAUNTLEROY, J., delivered the opinion of the court.

A brief statement of the facts of the case, as disclosed by the record, is as follows:

On the twenty-fifth day of December, 1876, the appellant, Benjamin F. Flick and Margaret, his wife, executed,

VOL. LXXXIII—98

acknowledged, and delivered a deed of trust to Jasper Hause, trustee, by which they granted and conveyed unto the said Jasper Hause a certain tract or parcel of land lying and being in the county of Rockingham, Virginia, containing about eighty acres, more or less, and all his (the said Flick's) personal property, in trust to secure the payment to the said Charles Fridley of the sum of $450, evidenced by note, under seal, in words and figures as follows:

"450. Three years after date, for value received, I promise and bind myself, my heirs, etc., to pay unto Charles Fridley, or order, four hundred and fifty dollars, with interest from date at the rate of six per cent.

"Witness my hand and seal this twenty-fifth day of December, 1876. BENJAMIN F. FLICK. [Seal.]"

The said deed contained the usual covenant that, if the debt and interest secured be not paid when due and demanded, then the trustee shall advertise and sell the property conveyed, or so much thereof as may be necessary to satisfy the said debt and interest, and cost of sale, etc. The said deed of trust was duly recorded in the clerk's office of the county court of Rockingham county, December 26, 1876. The said Charles Fridley died intestate on the thirtieth day of March, 1884; and the appellee, Henry N. Beery, administrator of Charles Fridley, deceased, duly qualified as such.

At the July rules, 1884, Benjamin F. Flick, the appellant, filed his bill in the cause, in which he sets forth the said bond and deed of trust, and states that the said Charles Fridley has died since the execution of the said trust deed, and that the bond of $450 therein secured is now in the possession of Henry N. Beery, his administrator, who claims the right to collect the same by enforcing the sale

of the real estate conveyed in the said deed of trust; that there is nothing due said Fridley's estate on the said bond, and that the said Fridley in his life-time acknowledged the fact, and stated that he had indorsed on said bond a receipt of the payment as satisfaction of the same; and that, relying on the statement of the said Fridley to that effect, he had settled with him upon the basis of this bond having been paid; that since the death of the said Fridley he had ascertained that he had failed to make any indorsement of payment or credit upon the said bond; and that the said deed of trust still stands upon the record of the said county court, without any indorsement of payment or credit thereon, as a valid and subsisting lien upon the real estate conveyed therein, and as a cloud upon his (appellant's) said real estate. And the prayer of the bill is that the said Henry N. Beery, administrator of Charles Fridley, deceased, be made a party defendant, and that he be compelled to deliver up the said bond, and that the court will decree the said bond and deed of trust to be cancelled, so that the cloud upon the title to the said real estate may be removed, and that he, the said B. F. Flick, appellant, may hold the said real estate free from any incumbrance thereon by reason of the said deed of trust.

The said Henry N. Beery, administrator of Charles Fridley, deceased, demurred to the bill; and, the said demurrer being overruled by the court, he answered the bill; and admitting the possession of the bond, as administrator of Charles Fridley, deceased, and asserting his right as such, to collect the said bond, and to enforce the lien of the deed of trust securing it, he denies, as wholly untrue, the averments of the bill that Charles Fridley in his life-time, in a settlement between himself and the complainant, B. F. Flick, or at any other time, place or way, ever acknowledged that there was nothing due him on the said deed of trust, or ever stated or admitted that he had

indorsed, or would indorse, upon the said bond, a receipt showing the payment or satisfaction of the same, or any part thereof; and he denies the statement that the complainant, B. F. Flick, ever relied, or had the right to rely,. upon any statement of the said Fridley to that effect, or had ever settled with him the said Fridley, upon the theory or basis that the said bond had been paid, in whole or in part; and he denies that the said Flick has ever paid the said bond, or any part thereof, either to the said Charles Fridley in his life-time, or to him, the said administrator, since his death. He avers, in his answer, that the said Flick has not pretended heretofore that the bond debt, or any part of it, had been paid, but that it was invalid, and did not exist; he, the said Flick, claiming that the bond and deed of trust were intended to be, and was, a device or sham to cover and conceal the property of the said Flick from being taken for debts or liabilities of his, which he feared might give him trouble. The said answer avers that, during the life-time of the said Charles Fridley, the said Flick had repeated opportunities, and even occasion, to have the bond and deed of trust released, and yet never received such a release, nor applied to the court to have it released; that now that Charles Fridley, who, in his life-time, could have spoken in regard to the matter, being dead, he, the said administrator of Charles Fridley, demands, as he is in duty bound to do, clear and strict proof of the alleged payment of the said bond and deed of trust debt, and when, how, and to whom it was so paid.

Depositions were taken and filed in the cause, both by the complainant and the defendant; and the court, proceeding to hear and determine the cause upon the merits, dismissed the bill, with costs in favor of the defendant.

There is no proof whatever in this record that *in any settlement* between the parties Fridley acknowledged that there was nothing due on the bond, and that he had in-

dorsed on it a receipt of the payment as satisfaction of the same. The evidence introduced by Flick to prove the alleged payment of the $450 bond is the statement of his son-in-law—a young man living in Flick's family—that, in a casual conversation, at the still-house of Fridley, outside of the still-house, and when they were talking about the sale of apples, Mr. Fridley said that "the note of the deed of trust was receipted paid"; but that nothing was said as to how or when it was paid. George Webster, a man on unfriendly terms with Fridley up to his death, says that there was a settlement between Mr. Fridley and Mr. Flick after the note for $450 was given, which was closed by Flick's bond to Fridley for $182; but he gives the items of that settlement, showing that no part of the $450 bond was embraced in that settlement; and he expressly states that no deed of trust was mentioned at all or referred to in that settlement,—the fact being that the said bond for $450 was not then due, and did not mature until seventeen months thereafter, to-wit, on the twenty-fifth of December, 1879. Silas Flick, a brother of B. F. Flick, says that he had a conversation with Fridley. "He was talking around. He said, at his still-house, he had a deed of trust over my brother Ben's property. I said, 'Ben certainly was intoxicated,—drunk; something was the matter with him.' He says, 'This has been receipted paid.' Nothing more he said to me; he stopped on that." Joseph Kavanaugh, in his testimony, is uncertain as to the time; but, whether he referred to the conversation alleged by Webster or by Silas Flick, he does not pretend to say that the bond secured in the deed of trust, or the deed of trust itself, was referred to by Mr. Fridley in that conversation, or that Mr. Fridley said it was paid, or "receipted paid."

This is all the evidence introduced and relied on by the complainant, Flick, tending to show that the debt evidenced by the $450, and the recorded deed of trust, has

been paid, although the administrator of Fridley, in his answer and cross-bill, in view of the death of Fridley, and the loss of his testimony, demanded clear proof of the alleged payment of the said bond, and that Flick should show how, when, and to whom the said debt was paid, and in what amount or amounts. There is no evidence in the record to show that B. F. Flick ever paid one cent to Charles Fridley, in his life-time, on either the $450 bond, or on the unsecured $182 bond, the proof only being that he paid only a part of the $182, since the death of said Fridley, to his administrator. This whole theory is negatived by the bond having no indorsement or credit upon it; by the deed of trust being unreleased; by B. F. Flick's not having, nor claiming to have ever had, any receipt for payments, in whole or in part; by all the circumstances of the case; and by the fact that Flick himself never, at any time or to any one, claimed that he had actually paid the debt, but only alleging, for the first time, after death of Fridley, that he did not owe the debt. He was present at the appraisement of Fridley's property, and he did not claim to the appraisers that the bond debt was paid, but that it was without consideration; and therefore and thereupon the appraisers did not place it in the "first-class, *as good*," as they did with Mr. Flick's bond for $182, but put it among the doubtful bonds, with the entry on the appraisement: "Mr. Flick claims that the above bond was without consideration, and hence it is placed in the second-class." Mr. Flick never claimed to the administrator that he had paid the bond, or any part of it; but, on the contrary, on two special occasions, stated to him that "he did not owe it; that it was fictitious— without consideration." He told Mr. Hause, one of the appraisers, on the day of the appraisement, that he "does not owe the debt"; that the bond was given without any consideration; that "it was given to save his land against something that he expected or anticipated would come

against him." "At no time during that conversation did he state that he had actually paid the bond," says Mr. Hause. He stated to Mr. Harrison, another of the appraisers, on the same occasion, that "he did not owe the bond; that it was without consideration; that it was given to keep him from being broken up."

This is the defense made out by B. F. Flick himself, and stated to Fridley's administrator on repeated occasions, and to the appraisers of Fridley's estate; and it is the only one ever claimed by him until the filing of his bill in the cause. Neither law nor equity can relieve him. See *Harris* v. *Harris*, 23 Grat. 737, 752, 753, 755, 756, and the authorities there cited. "Nor is it necessary that the fraudulent intent be established by express proof." *Johnson* v. *Wagner*, 76 Va. (1 Hansbrough), 591.

There is no error in the decree complained of, and we are of opinion to affirm the same.

DECREE AFFIRMED.